**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DANIEL K. WOODIE, | Case No. 1:22-CV-00324 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| MOTOROLA SOLUTIONS, INC., | **OPINION & ORDER** |
| Defendant. | |

This matter is before the court on the motion for summary judgment filed by Defendant Motorola Solutions, Inc. ("MSI"). Plaintiff Daniel Woodie has responded in opposition. For the following reasons, the Court will grant summary judgment in favor of MSI.

## I.  BACKGROUND

On June 7, 2022, Woodie sued MSI, asserting three claims of employment discrimination: (1) Failure to Accommodate, (2) Disability Discrimination, and (3) Retaliation. (Doc. 1). After the close of discovery, on August 9, 2023, MSI moved for summary judgment. (Doc. 16).

MSI employed Woodie as an at-will employee from September 30, 2013, to May 21, 2022. (Doc. 1, PageID 3-4). Woodie worked in a system technologist role, which required him to travel for work seventy-five percent of the time. (*Id.*, PageID 4). Woodie received copies of MSI's Equal Employment Opportunity policy, Reasonable

Accommodation Policy, and Code of Conduct upon hire. (Doc. 16, PageID 798). The MSI

Reasonable Accommodation Policy states, "any employee or applicant who has a

disability that requires an accommodation in order to apply for employment, perform his

or her job, or otherwise enjoy the benefits and privileges of employment should fill out the

attached Request for Accommodation Form and consult Occupational Health Resources.

Occupational Health Resources is the department responsible for processing requests

for accommodation." (*Id.*, PageID 799).

In or about December 2017, after four years employed by MSI, Woodie was

diagnosed with epilepsy. (Doc. 1, PageID 3). In July 2019, Woodie informed his MSI

supervisor about his medical condition. (Doc. 16, PageID 799). Woodie was referred to

MSI's Occupational Health Resource department ("HR") to request accommodations as

needed. (*Id.*). Woodie's supervisor offered to contact HR on Woodie's behalf. (*Id.*, PageID

800). Woodie declined the offer and did not contact HR, stating he "didn't expect to need

any special accommodations[,] but it is good to know there is someone to reach out to if

it were needed." (*Id.*).

Effective March 2020, travel requirements for Woodie and other MSI system

technologists were increased to from seventy-five percent to eighty percent. (*Id.*, PageID

798). In June or July 2020, Woodie requested a general schedule change specifically

"because of his health." (*Id.*, PageID 800). On September 25, 2020, an MSI human

resources employee informed Woodie that he could "apply for a reasonable

accommodation if needed" and provided Woodie with a copy of the accommodations

form. (*Id.*). In response to the employee's offer, Woodie stated, "I understand that[,] but

2

at the same time I don't really want to be treated any differently. I just want to be treated fairly." (*Id.*).

On numerous additional occasions between November 2020 and May 2021, Woodie asked his manager and supervisor for a reduced travel schedule. (Doc. 19, PageID 1190). In his first requests for reduced travel, Woodie said he was missing weekends at home and asked for the change on behalf of his entire group of system technologists. (Doc 16., PageID 798, 800). Unrelated to his requests for reduced travel requirements, Woodie told his supervisor that a medical condition was affecting his sleep. (*Id.*, PageID 800). Woodie was told to submit an accommodation request through HR. (*Id.*). In response to an additional request for reduced work travel, Woodie's supervisor responded to Woodie in an email: "Anything health related with regards to being able to work or travel keep HR and Occupational Health involved." (*Id.*, PageID 801).

MSI alleges that Woodie's performance was disruptive and sometimes insubordinate, as he often failed to "stay in his lane" and suggested modifications to assigned projects that exceeded the scope of work and were not approved through the proper chain of command. (*Id.*, PageID 805, 810). Woodie was removed from three work projects between June 2019 and July 2020. (*Id.*, PageID 802-5, 810). MSI asserts that Woodie was removed from these projects because Woodie (1) tended to overstep on projects and (2) his interactions with peers, supervisors, and customers were outside MSI's reasonable expectations. (*Id.*, PageID 795). MSI provided documentation of Woodie's dissatisfactory communications and reports. (*Id.*, PageID 802-5). MSI maintains that they coached and counseled Woodie as part of their performance management

program but that Woodie showed no improvement and instead threatened to quit his job with MSI. (*Id.*, PageID 810).

On May 21, 2021, MSI terminated Woodie's employment as a Federal Systems Technologist. The stated reason for Woodie's termination was "a combination of growing discontent with his performance, along with [Woodie] making his desires known that he wanted to depart from the company, or that he was looking to depart from the company." (Doc. 19, PageID 1191). Woodie admits that his behavior was not meeting MSI's expectations. (Doc. 16, PageID 812).

Before Woodie's formal termination, in a discussion with a supervisor, Woodie was informed that one of the reasons for his termination was his "repeated requests for scheduling changes." (Doc. 19, PageID 1204). MSI told Woodie that his separation was not "for cause" and he would remain eligible for future positions. (*Id.*, PageID 1192). Woodie attributes his poor work behavior to his medication side effects exacerbated by the increased travel requirements. (*Id.*, PageID 1190). Woodie stated that he was seeking alternative employment at the time of his termination. (Doc. 16, PageID 806). He accepted an employment offer the first business day following his termination and commenced his new employment within one month after his termination from MSI. (*Id.*).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a fact is "material" only when its resolution affects the outcome of an action, and a dispute is "genuine" when "the evidence is such that a reasonable jury could return

4

a verdict for the nonmoving party"). The Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact, the nonmoving party may not rest on the mere allegations in the pleadings but must instead put forth specific facts showing that there is a genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## III.  ANALYSIS

In disability discrimination cases, a plaintiff must prove that an employer intentionally discriminated. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805-806 (1973). When a defendant moves for summary judgment on the grounds that the evidence is insufficient to support a finding of intentional discrimination, a plaintiff may defeat summary judgment by submitting direct or indirect proof sufficient for a trier of fact to find the defendant intentionally discriminated against the plaintiff. *Id.* The *McDonnell Douglas* framework helps courts determine if a plaintiff's discrimination claim based on indirect proof survives summary judgment. *Id.* at 802.

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of producing evidence sufficient to establish a prima facie discrimination case. *Id.* The burden of proving a prima facie case of discriminatory treatment is minimal and does not even need to rise to the level of a preponderance of the evidence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the employer satisfies its burden of producing evidence sufficient to find a nondiscriminatory reason for its adverse action, the burden returns to the plaintiff. *McDonnell*, 411 U.S. at 802.

The Americans with Disabilities Act (ADA), which was amended by the Americans with Disabilities Amendment Act (ADAA), prohibits employers from discriminating against a qualified employee with a disability on the basis of that disability by "not making reasonable accommodations to the known physical or mental limitations of [that employee] . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(a), (b)(5)(A). Under the ADA, individuals with disabilities include those with impairments substantially limiting a major life activity. 42 U.S.C. §12102(1), (2); *see also* 29 C.F.R. § 1630.2(g).[1]

There are five elements that a plaintiff must meet to establish a prima facie case of failure to accommodate: (1) the plaintiff is disabled within the meaning of the ADA, (2) the plaintiff is otherwise qualified for the position, with or without accommodation, (3) the plaintiff's employer knew or had reason to know of his disability, (4) the plaintiff requested an accommodation, and (5) the plaintiff's employer failed to provide the necessary accommodation. *See DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

## I.    Woodie Has Not Presented Direct Evidence of Disability Discrimination.

A plaintiff may defeat summary judgment by submitting evidence that itself is sufficient for a trier of fact to find the defendant intentionally discriminated against the plaintiff. *McDonnell*, 411 U.S. at 805-806. Direct evidence is evidence that would, "if believed, require the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir.

---

[1] As updated by the ADAA, individuals with epilepsy qualify as having a disability under the ADA's definition because they can be limited in neurological functions and other major life activities.

2003). Woodie presents MSI's comment that Woodie's "repeated requests for scheduling changes" was a cause for termination as direct evidence. (Doc. 19, PageID 1204).

Woodie requested schedule changes on numerous occasions for reasons unrelated to his disability. There is no direct connection between those requests for schedule changes and Woodie's disability. Thus, the statement regarding Woodie's "repeated requests for scheduling changes" does not require the conclusion that unlawful discrimination occurred. Because Woodie does not present any other direct evidence of disability discrimination, he must prove employment discrimination through indirect evidence. *McDonnell*, 411 U.S. at 802.

**II.    Woodie does not meet the burden of producing evidence sufficient to establish a prima facie case of disability discrimination because he did not request an accommodation within the meaning of the ADA.**

Of the five elements that Woodie must establish for a prima facie case of failure to accommodate, the requirement to request an accommodation is most at issue. The plaintiff bears the initial burden of requesting an accommodation. *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014); *see also Melange v. City of Ctr. Line*, 482 F. App'x 81, 85 (6th Cir. 2012). Reasonable accommodation is not at issue if the plaintiff has never requested an accommodation. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998).

Courts in this circuit have no bright-line test to determine when an accommodation request has been made. *Judge*, 592 F. App'x at 407. On one hand, courts have held that plaintiffs have flexibility in how they request an accommodation. *See, e.g.*, *Mobley v. Miami Valley Hosp.*, 603 F. App'x 405, 413 (6th Cir. 2015); *see also Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007) (holding that no "magic

7

words" are required to request an accommodation). On the other hand, the employee's request for accommodation must make clear the accommodation is being requested because of the employee's disabilities, *id.*, and "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation," *Gantt*, 143 F.3d at 1046-47.

Woodie argues that he requested an accommodation when he (1) told his MSI supervisor about his condition, (2) requested reduced travel on behalf of the team of systems technologists, (3) requested reduced travel to be at home on weekends, and (4) requested reduced travel because of impacted sleep as a result of his condition. (Doc 16, PageID 800).

First, when Woodie told his MSI supervisor about his condition, he was explicitly referred to the appropriate contact to request accommodations if needed. (*Id.*). Woodie said he "didn't expect to need any special accommodations[,] but it is good to know there is someone to reach out to if it were needed." (*Id.*). Woodie's deposition testimony reveals that he received and understood MSI's employment and accommodation policies. (*Id.*, PageID 798). The summary judgment evidence shows that Woodie was repeatedly referred to MSI's appropriate contact for accommodations, and an HR officer even contacted Woodie directly with the form to request an accommodation. (*Id.*, PageID 800). Woodie did not take action; rather, he affirmatively denied an accommodation, stating that he "didn't expect to need any special accommodations." (*Id.*).

Woodie's statement and repeated failure to request an accommodation would cause a reasonable employer to understand Woodie was not seeking an accommodation. MSI did not speculate as to Woodie's need for accommodation, nor was MSI required to

do so. *Gantt*, 143 F.3d at 1046-47. This is especially so because Woodie stated, "I don't really want to be treated any differently." (Doc. 16, PageID 800); *see Leeds* 249 F. App'x 449.

Second, although Woodie requested less work-related travel, his first requests were unrelated to his disability. (Doc. 16, PageID 800-01). MSI could not have been expected to deduce that Woodie's requests—on behalf of the entire systems technologist's team—to be home on weekends was connected to Woodie's need for an accommodation. Though MSI *might* speculate that the request could be in connection to the need for an accommodation, it does not change the fact that Woodie still had never actually requested a reasonable accommodation for his disability.

**III.   Even if Woodie met the initial burden of establishing a prima facie case of discrimination, MSI articulated a legitimate, non-discriminatory reason for terminating Woodie's employment—Woodie's numerous violations of MSI's standards were documented thoroughly.**

If a plaintiff meets the initial burden of establishing a prima face case of disability discrimination, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for its adverse action. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *see also Macy v. Hopkins Cnty. School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007). This is a burden of production, not of persuasion. *Reeves,* 530 U.S. at 142.

Even if Woodie could establish a prima facia case to defeat summary judgment, MSI still meets its burden of production by articulating a legitimate, non-discriminatory reason for terminating Woodie's employment. The stated reason for Woodie's termination was "a combination of growing discontent with his performance, along with [Woodie] making his desires known that he wanted to depart from the company, or that he was

looking to depart from the company." (Doc. 19, PageID 1191). Woodie even acknowledged that his behavior was not meeting MSI's expectations. (Doc. 16, PageID 812).

MSI provided documentation of Woodie's unsatisfactory performance and communications with other employees. (*Id.*, PageID 802-05). Included in MSI's documentation is proof that Woodie was removed from three work projects between June 2019 and July 2020. (Doc. 16, PageID 805). MSI asserts that Woodie was removed from these projects because Woodie (1) tended to overstep on projects and (2) because Woodie's interactions with peers, supervisors, and customers were outside MSI's reasonable expectations. (*Id.*). MSI provides evidence that it coached and counseled Woodie as part of its performance management program, but Woodie showed no improvement and instead threatened to quit his job with MSI. (*Id.*, PageID 810).

Even viewing the evidence in Woodie's favor, no reasonable juror could find that his pattern of behavior, removal from projects, and disruptive interactions with peers, supervisors, and customers did not motivate MSI's decision to terminate his employment. In sum, Woodie has failed to establish a prima facie case of disability discrimination because he has offered no direct or indirect evidence to prove that MSI violated the ADA. And even if Woodie had met the initial burden, MSI has provided sufficient evidence of a legitimate, non-discriminatory reason for its adverse action.

## IV.    CONCLUSION

Accordingly, the motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge
